James J. Tutchton, CA Bar # 150908
Defenders of Wildlife
535 16th Street, Suite 310
Denver, CO 80202
(720) 301-3843
jtutchton@defenders.org

Rachel Zwillinger, CA Bar # 268684
Defenders of Wildlife
1303 J. Street, Suite 270
Sacramento, CA 95814
(415) 686-2233
rzwillinger@defenders.org

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**(San Francisco Division)**

_____

| | |
|---|---|
| DEFENDERS OF WILDLIFE, ) | Case No. _____ |
| Plaintiff, ) | |
| vs. ) | **COMPLAINT FOR** |
| ) | **DECLARATORY AND** |
| SALLY JEWELL, United States Secretary of the ) | **INJUNCTIVE RELIEF** |
| Interior, sued in her official capacity, ) | |
| Defendant. ) | |

_____

**INTRODUCTION**

1.     Plaintiff, Defenders of Wildlife (Defenders) brings this action against Defendant, Sally Jewell, United States Secretary of the Interior (Secretary) to force her to carry out her mandatory duty under the Endangered Species Act (ESA), 16 U.S.C. §§ 1531 *et seq.*, to develop and implement a final "recovery plan" for the Giant Garter Snake, *Thamnophis gigas* (Snake).  The ESA provides the Secretary "*shall* develop and implement [recovery] plans for the conservation and survival of endangered species and threatened species listed pursuant to [the ESA], unless [she] finds that such a plan will not promote the conservation of the species."  16 U.S.C. § 1533(f)(1)

*Complaint*

(emphasis added).  The Snake has been listed as a threatened species under the ESA since 1993.  58 Fed. Reg. 54,053 (October 20, 1993) (threatened listing effective on November 19, 1993).  In the ensuing nearly 22 years, the Secretary has neither developed and implemented a final recovery plan for the Snake, nor made a finding that such a plan would not promote the conservation of the species.  The Secretary's failure to develop and implement a final recovery plan for the Snake is a violation of the ESA, 16 U.S.C. § 1533(f)(1), and/or constitutes agency action unlawfully withheld or unreasonably delayed within the meaning of the Administrative Procedure Act (APA), 5 U.S.C. § 706(1).  Accordingly, Defenders seeks a declaratory judgment that the Secretary's continued inaction is illegal and an injunction requiring her to act in accordance with the law by the earliest possible date.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this lawsuit presents a federal question under the laws of the United States including the ESA, 16 U.S.C. §§ 1531 *et seq.*, the APA, 5 U.S.C. §§ 701 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the Equal Access to Justice Act, 28 U.S.C. § 2412.  This Court also has jurisdiction under 28 U.S.C. § 1346 (United States as a Defendant), the APA, 5 U.S.C. §§ 702, 706(1), and the ESA, 16 U.S.C. §§ 1540(c), (g) (action arising under the ESA and citizen suit provision).  The United States' sovereign immunity is waived pursuant to the ESA, 16 U.S.C. § 1540(g), and/or the APA, 5 U.S.C. § 702.  As required by the ESA's citizen suit provision, 16 U.S.C. § 1540(g)(2)(C), Defenders has afforded the Secretary with more than 60-days written notice of the violations alleged in this Complaint and of its intention to sue to enforce the law.  On April 23, 2015, Defenders sent, via certified mail, return receipt requested, a formal 60-day notice letter to the Secretary and Dan Ashe, Director of the U.S. Fish and Wildlife Service (Director) detailing the violations of law alleged in this Complaint and informing them of Defenders' intention to sue if its concerns were not redressed.  The Secretary and Director Ashe received this notice letter on April 27, 2015.  Neither the Secretary, nor the Director responded to Defenders' notice letter and the Secretary has not remedied her violations of law by developing and implementing a final recovery plan for the Snake.  Accordingly, an actual controversy exists

between the parties within the meaning of the Declaratory Judgment Act. 28 U.S.C. § 2201. This Court has authority to grant Defenders' requested relief pursuant to 28 U.S.C. §§ 2201-02 (Declaratory Judgment Act), 16 U.S.C. § 1540(g) (ESA), and 5 U.S.C. § 706(1) (APA).

3. Venue properly lies in this judicial district pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e)(1)(B) as the Snake is known to, or believed to, occur in Alameda, Contra Costa, Lake, and Napa counties.

**INTRADISTRICT ASSIGNMENT**

4. This case should be assigned to the San Francisco or Oakland Divisions of this judicial district based on the Snake's occurrence in Alameda, Contra Costa, Lake, and Napa counties. *See* Civil L.R. 3-2(c).

**PARTIES**

5. Plaintiff, DEFENDERS OF WILDLIFE, sues on behalf of itself and its adversely affected members. Defenders is a national non-profit conservation organization headquartered in Washington, D.C., and with offices in California. Defenders has more than 1.2 million members and supporters, including thousands in California generally and in the counties where the Snake is believed to occur specifically. Defenders is a science-based advocacy organization focused on conserving and restoring native species and the habitat upon which they depend, and has been involved in such efforts since the organization's establishment in 1947. Defenders' members and staff frequently use and enjoy, and will continue to use and enjoy, the Snake and its current and potential habitat for wildlife viewing and for recreational, aesthetic, and scientific activities. Defenders and its members are particularly concerned with the conservation of the Snake and the ecosystem on which it depends for its survival. Defenders and its members have a substantial interest in this matter and are adversely affected by the Secretary's failure to comply with the ESA in this case. The requested relief will redress the injuries of Defenders and its members.

6. Defendant, SALLY JEWELL, is the Secretary of the United States Department of the Interior. As such she is responsible for developing and implementing recovery plans for terrestrial species, such as the Snake, which are listed pursuant to the ESA. She is sued in her official capacity.

*Complaint*

1

**LEGAL BACKGROUND**

2      7.     The purpose of the ESA is to "provide a means whereby the ecosystems upon which

3  endangered species and threatened species depend may be conserved, [and] to provide a program

4  for the conservation of such endangered and threatened species …." 16 U.S.C. § 1531(b).  The

5  ESA defines conservation as "the use of all methods and procedures which are necessary to bring

6  any endangered species or threatened species to the point at which the measures provided pursuant

7  to [the ESA] are no longer necessary."  16 U.S.C. § 1532(3).  Accordingly, the ultimate goal of the

8  ESA is not only to temporarily save endangered and threatened species from extinction, but also to

9  recover these species to the point where they are no longer in danger of extinction and no longer

10  need ESA protection.

11      8.     As part of its statutory scheme to conserve endangered and threatened species, the

12  ESA provides the Secretary "shall develop and implement [recovery plans] for the conservation

13  and survival of endangered species and threatened species listed pursuant to [the ESA], unless [she]

14  finds that such a plan will not promote the conservation of the species."  16 U.S.C. § 1533(f)(1).

15      9.     In developing and implementing recovery plans, the Secretary shall, to the

16  maximum extent practicable, give priority to those endangered species or threatened species,

17  without regard to taxonomic classification, that are most likely to benefit from such plans,

18  particularly those species that are, or may be, in conflict with construction or other development

19  projects or other forms of economic activity.  16 U.S.C. § 1533(f)(1)(A).

20      10.    In all such recovery plans, the Secretary shall, to the maximum extent practicable,

21  incorporate in each plan:

22          (i)    a description of such site-specific management actions as may be necessary

23  to achieve the plan's goal for the conservation and survival of the species;

24          (ii)   objective, measurable criteria which, when met, would result in a

25  determination, in accordance with the provisions of the Act, that the species be removed from the

26  threatened or endangered species lists; and

27          (iii)  estimates of the time required and the cost to carry out those measures

28  needed to achieve the plan's goal and to achieve intermediate steps toward that goal.

*Complaint*

1    16 U.S.C. § 1533(f)(1)(B).

2         11.      The ESA further provides that in developing and implementing recovery plans the

3 Secretary may procure the services of appropriate public and private agencies and institutions, and

4 other qualified persons, 16 U.S.C. § 1533(f)(2), that the Secretary shall report to Congress every

5 two years on the status of efforts to develop and implement recovery plans for all listed species and

6 on the status of all species for which such plans have been developed, 16 U.S.C. § 1533(f)(3), that

7 the Secretary shall provide for public notice of, and comment on, any new or revised recovery plan

8 prior to its final approval and shall consider all information presented during the public comment

9 period prior to final approval of the new or revised recovery plan, 16 U.S.C. § 1533(f)(4), and that

10 each Federal agency, prior to implementation of a new or revised recovery plan, shall consider all

11 information presented during the public comment period, 16 U.S.C. § 1533(f)(5).

12         12.      The Secretary has adopted a policy that she will develop a recovery plan in

13 compliance with 16 U.S.C. § 1533(f) within two and one-half years of the final listing of a

14 threatened or endangered species. *See* 59 Fed. Reg. 34,272 (July 1, 1994); *see also* Interim

15 Endangered and Threatened Species Recovery Planning Guidance Version 1.3 at § 1.5.1 ("Final

16 recovery plans should be completed within 2.5 years of listing, unless an extension for a

17 particularly complex plan has been approved by the Headquarters office.").

18         13.      Additionally, in order to use her available resources most efficiently, the Secretary

19 has developed a policy to prioritize recovery planning by assigning each listed species a recovery

20 planning priority number from 1 to 18 according to the degree of threats it faces, its recovery

21 potential, and its taxonomic distinctness. 48 Fed. Reg. 43,098 (September 21, 1983). A species'

22 numeric rank also may be elevated by adding a "C" designation to indicate that it is, or may be, in

23 conflict with construction or other development projects, or other forms of economic activity. *Id.*

24 Species with a high priority rank (1C, 1, 2C, 2) are those that are the most threatened and have the

25 highest potential for recovery. Species with a low rank (16, 17, 18) are the least threatened and

26 have the lowest recovery potential. *Id.*

27

28

**FACTS GIVING RISE TO PLAINTIFF'S CLAIMS**

14.     The Giant Garter Snake, *Thamnophis gigas*, is one of the largest garter snakes reaching a total length of at least 64 inches.  The Snake is endemic to the valley floor wetlands of the Sacramento and San Joaquin Valleys of California.  Its historic range stretched from northern Butte County to near Bakersfield in Kern County.  The Snake inhabits marshes, sloughs, ponds, small lakes, low gradient streams and other waterways, and agricultural wetlands such as irrigation and drainage canals and rice fields.

15.     Good snake habitat contains ample water during the Snake's active season (early spring through mid-fall), emergent herbaceous wetland vegetation, such as cattails and bulrushes, for escape cover and foraging habitat during the active season, grassy banks and openings in waterside vegetation for basking, and higher elevation uplands for cover and refuge from flood waters during the Snake's dormant season (winter).

16.     In 1993, the Secretary listed the Snake as a threatened species under the ESA.  At that time, the Secretary identified 13 distinct Snake populations.  Since 1993, and despite the Snake's legal protection, two of these 13 populations, those located in Burrell/Lanare and Liberty Farms in the Yolo Basin, appear to have been extirpated.  Several other populations face a high risk of extirpation.

17.     The primary threat to the Snake is habitat destruction and modification, particularly from urbanization, flood control and canal maintenance, grazing and agricultural practices, wetland management for waterfowl, and the introduction of invasive non-native plants.  Urbanization remains one of the greatest threats to the Snake's survival as urban landscapes encroach on the Snake's diminishing habitat.  When suitable natural wetlands are unavailable, agricultural lands used for rice production provide an alternative habitat for the Snake.  As the urban landscape expands, the lands devoted to rice agriculture, and thus the Snake's alternative habitat, decrease. The urbanized area of California is predicted to triple by 2100, presenting a significant threat to the Snake's survival.  Other changes to historical agricultural practices present an additional threat to the Snake.  For example, water transfers will result in the fallowing of large areas of rice agriculture or conversion of rice fields to other crops and thus further diminish the Snake's

available habitat.

18.     Due to the Snake's dependence on wetlands, drought and climate change pose additional threats to the Snake's habitat.  Where Snake populations persist on marginal habitat, drought or increased temperature conditions could, over the short-term, result in high mortality rates and low fecundity and survivorship which will continue even after the extreme weather event has ceased.  Additionally, over the long-term, habitat reductions due to climate change could cause Snake sub-populations to be extirpated from isolated habitats or to experience reduced genetic viability due to inbreeding.  If remaining Snake habitat is not managed properly for the Snake and corridors linking suitable Snake habitat blocks are not maintained, extended periods of drought, such as that which is currently ongoing, will likely result in the elimination of additional Snake populations.

19.     Despite the fact that habitat loss and modification is a major threat to the Snake, the Secretary has never "designated," and thus legally protected, critical habitat for the Snake.

20.     In the nearly 22 years since the Secretary first listed the Snake as a threatened species pursuant to the ESA, the Secretary has never developed and implemented a final recovery plan for the Snake, nor made a finding that such a plan would not promote the conservation of the species.

21.     In 1994, shortly after the Snake was listed, the Secretary indicated its population status was uncertain, that no recovery plan had been prepared but that a plan was under development, and that between zero and 25 percent of recovery objectives for the Snake had been achieved.  In addition, in 1994 the Secretary assigned the Snake a recovery priority number of 2C. A recovery priority number of 2C is among the highest possible recovery priority numbers (2 out of 18, with the "C" elevating the "2" because the Snake's recovery is in conflict with construction, development or other economic activities), *see* 48 Fed. Reg. 43098 (explaining recovery priority ranking system).

22.     As of the end of fiscal year 1998, the Secretary indicated that the Snake's population status was uncertain, that between zero and 25 percent of recovery objectives had been achieved, that the species' recovery priority number remained at 2C, and that a draft recovery plan had been

1   prepared.

2        23.     As of the end of fiscal year 2000, the Secretary again indicated that the Snake's

3   population status remained uncertain, that between zero and 25 percent of recovery objectives had

4   been achieved, that the species' recovery priority number was still 2C, and that a draft recovery

5   plan had been prepared.

6        24.     In 2002, the Secretary indicated that the Snake had a draft recovery plan prepared in

7   1999, that its recovery priority number was still 2C, its population status was uncertain, and that

8   between zero and 25 percent of recovery objectives had been achieved.

9        25.     In 2004, the Secretary indicated that the Snake had a draft recovery plan prepared in

10   1999, its recovery priority number was still 2C, and that between zero and 25 percent of recovery

11   objectives had been achieved.  As of the end of fiscal year 2004, the Secretary also indicated that

12   the Snake's population was decreasing and that threats to its survival were increasing.

13        26.     In 2006, the Secretary indicated that the Snake had a draft recovery plan prepared in

14   1999, its recovery priority number was still 2C, zero to 25 percent of recovery objectives had been

15   achieved, and that its population status was again declining.

16        27.     In 2008, the Secretary indicated that the Snake had a draft recovery plan prepared in

17   1999, its recovery priority number was still 2C, and that its population status was still decreasing.

18        28.     In 2010, the Secretary indicated the Snake had a draft recovery plan prepared in

19   1999, its recovery priority number was still 2C, and that its population was still declining.

20        29.     In 2012, the Secretary indicated that the Snake had a draft recovery plan prepared in

21   1999, that it remained threatened, and that its recovery priority number was now 3C.  The Secretary

22   did not explain the change in the Snake's recovery priority number from 2C to 3C, in the context of

23   noted ongoing population declines.  In 2012, the Secretary also stated that preparation of a final

24   recovery plan for the Snake would provide important benefits for the species' recovery.  This 2012

25   finding, the preparation of the draft recovery plan in 1999, and the Secretary's continual

26   assignment of high recovery priority numbers to the Snake since 1994 including the "C"

27   designation indicate the Secretary has concluded the preparation of a final recovery plan for the

28   Snake *would* promote the conservation of the species.  *See* 16 U.S.C. § 1533(f)(1).

*Complaint*

30.     During the nearly 22 years the Snake has been listed under the ESA, the Secretary has voluntarily completed final recovery plans for species with lower recovery priority numbers than the Snake.

31.     In 1999, the Secretary identified 52 recovery actions for the Snake.  The Secretary has recently indicated that 37 of these actions have not been started.

32.     In 2012, the Secretary indicated that the 1999 draft recovery plan for the Snake had been revised and submitted to the U.S. Fish and Wildlife Service's Region 8 headquarters for approval as a final recovery plan as of September 2011.

33.     Nonetheless, despite having listed the Snake under the ESA for nearly 22 years, having prepared a draft recovery plan 16 years ago, having determined the Snake has a high recovery priority number and is threatened by construction, development, or other forms of economic activity (elevating this already high recovery priority number), having determined publication of a final recovery plan would benefit the conservation of the species, and having noted declines in the Snake's population and increasing threats – the Secretary still has not prepared a final recovery plan for the Snake.  The Secretary's failure violates her own policy of preparing a final recovery plan within 2.5 years of a species listing and is otherwise unreasonable.

**FIRST CLAIM FOR RELIEF – (Violation of ESA)**

34.     All preceding allegations in this Complaint are incorporated herein by reference.

35.     The Secretary has violated her mandatory, non-discretionary duty found in Section 4(f) of the ESA, 16 U.S.C. § 1533(f), to either develop and implement a final recovery plan for the Snake, or make a finding that such a plan will not promote the conservation of the species.  To the contrary, the Secretary has determined preparation of a final recovery plan for the Snake would provide important conservation benefits to the species.  The Secretary's violation of law is actionable under the ESA's citizen-suit provision.  16 U.S.C. § 1540(g)(1)(C).  The APA provides the standard of review.  5 U.S.C. § 706(1).  The Secretary's refusal to fulfill her mandatory duty constitutes unlawfully withheld or unreasonably delayed agency action within the meaning of the APA.  Id.

*Complaint*

**SECOND CLAIM FOR RELIEF – (Violation of APA)**

36.     All preceding allegations in this Complaint are incorporated herein by reference.

37.     The Secretary has unlawfully withheld or unreasonably delayed her compliance with Section 4(f) of the ESA, 16 U.S.C. § 1533(f), with respect to the Snake for nearly 22 years in violation of the APA.  5 U.S.C. § 706(1).

**REQUEST FOR RELIEF**

WHEREFORE, Defenders requests that this Court enter judgment providing the following relief:

A.     A declaratory judgment that the Secretary has violated her mandatory duty found in Section 4(f) of the ESA with respect to the Snake;

B.     A declaratory judgment that the Secretary has unlawfully withheld or unreasonable delayed compliance with Section 4(f) of the ESA with respect to the Snake in violation of the APA;

C.     An injunctive order requiring the Secretary to comply with Section 4(f) of the ESA with respect to the Snake by a reasonable date certain;

D.     An order awarding Defenders its costs of litigation, including reasonable attorney's fees, as provided by the ESA or Equal Access to Justice Act, 28 U.S.C. § 2412; and

E.     Such other and further relief as the Court deems just and proper.


Respectfully Submitted,

Dated: September 23, 2015                    *s/James J. Tutchton*
                                             James J. Tutchton, CA Bar # 150908
                                             Defenders of Wildlife
                                             535 16th Street, Suite 310
                                             Denver, CO 80202
                                             (720) 301-3843
                                             jtutchton@defenders.org

                                             Rachel Zwillinger, CA Bar # 268684
                                             Defenders of Wildlife
                                             1303 J. Street, Suite 270
                                             Sacramento, CA 95814
                                             (415) 686-2233
                                             rzwillinger@defenders.org

*Complaint*